CARTER & BRO. *et al. v.* DUBLIN BANKING CO.

1. Where, on the trial of an equitable petition against several defendants, the court, after preparing for submission to the jury several distinct questions the purpose of which was to have them find a special verdict of the facts only in the case, instructed them that if they answered the first question in the affirmative they need not consider or answer the remaining questions; and where the jury did answer the first question in the affirmative, and, following the direction of the court, made no answer to the other questions; and where the sole finding of fact thus rendered did not warrant a judgment in favor of the plaintiffs as to the relief prayed for against one of the defendants, it was erroneous to enter upon such a verdict a judgment granting such relief.
2. In view of the ruling above announced, a new hearing in the present case is essential, in order that the various questions at issue between the parties may be adjudicated and determined.

Argued April 25, — Decided May 26, 1898.

Equitable petition. Before Judge Hart. Laurens superior court. July term, 1897.

*Anderson, Felder & Davis,* for plaintiffs in error.
*A. F. Daley* and *Wade & Wade,* contra.

LITTLE, J. W. J. Carter & Bro., being the owners of lots of land Nos. 123 and 138 of block No. 30 in the town of Dublin, Laurens county, Georgia, erected a machine-shop on what they supposed to be a portion of lot No. 138, and on March 28, 1893, they executed and delivered to the Dublin Banking Company their promissory note for fifteen hundred and ninety dollars, payable September 16, 1893, and also a mortgage to secure the same on "lots of land Nos. 123 and 138 of block No. 30 in plan of the town of Dublin, Laurens county, lying east of ditch that runs easterly across said block, the said lots being further

bounded on the north by Madison street, east by Decatur street, and south by line parallel to the Macon, Dublin & Savannah Railroad, and 20 feet distant therefrom, measured at right angles thereto." To the levy of an execution issued on the foreclosure of this mortgage, a claim to a part of the land described was interposed by George W. Moore. The Dublin Banking Company thereupon filed an equitable petition against the firm of Carter & Bro. and G. W. Moore, alleging that in the execution of the mortgage there was a mistake on the part of the petitioner and a fraud perpetrated on it by the mortgagors, in this: The mortgagors were doing a large business in the manufacture of machinery, and in carrying on their business had erected a machine-shop of the value of two thousand dollars, and they represented to petitioner that the shop was located on the land embraced in petitioner's mortgage, which representation petitioner believed to be true, and acted on by loaning to the mortgagors the money which is the consideration of the note secured by the mortgage, but, as petitioner afterwards ascertained, the shop was not located on the land embraced in the mortgage, but was located on lot No. 139, and was known to the mortgagors, at the time, to be located on that lot; and after they had procured the loan and executed the mortgage, they then procured their brother-in-law, G. W. Moore, a resident of Charleston, S. C., to purchase the lot of land upon which the shop was located, from one M. M. Green, who was the owner of such lot. The shop was placed upon said lot of Green for the deliberate purpose on the part of the defendants to injure, damage, and defraud petitioner, defendants intending at the time to borrow money from petitioner on the lots which they owned, by inducing petitioner to believe that the shop was located thereon, and further intending, after they had succeeded in this, to buy the lot of land upon which the house was located; and this they have accomplished through their agent and brother-in-law, who is now holding the same in trust for their benefit. The lots described in the mortgage are not worth over $150 and would have been worth $2,000 if the shop had been located thereon, and petitioner would not have loaned the money to defendants if it had not believed that the shop was located on the

land embraced in the mortgage. The price paid by Moore for the land was grossly inadequate, the value of the building not being taken into account by Moore and Green in their contract of sale of the land; and defendants Carter & Bro. have continued in the possession of the same from the time of the pretended purchase up to the present time, using it as their property. While the number of the lot upon which the building is located is not properly set forth in the mortgage, yet it is embraced in the description given by metes and bounds, provided the street described as Decatur street is located where petitioner believes it to be and where defendants represented it to be. There is some confusion in reference to the location of this street, the first survey representing it to be in one place, and a more recent survey representing it to be in a different place. The description in the mortgage would properly embrace the lot upon which the shop is located, if the same were to be determined by reference to the recent survey of the town. The contract was made with reference to the recent survey, and in describing the land it was understood by both petitioner and the defendants that the description by metes and bounds referred to the street as located by that survey. There was no mistake as to the numbers of lots embraced in the mortgage, but the mistake made by petitioner and the fraud perpetrated by defendants consists in this: that the strip of land, about forty feet by one hundred feet, of lot No. 139, lying between new Decatur and old Decatur, and on which the shop is located, was represented by defendants to be a portion of lot No. 138; in other words, lot 138 was represented as being bounded on the east by Decatur street, when in fact it was not a portion of lot 138 by the old survey, but was a strip which had been cut off by new Decatur street from lot 139. If it should be pretended by defendants that they executed the mortgage believing that the shop was located on one of the lots described in the mortgage, it would have been a mutual mistake. Petitioner did not discover the mistake until after the foreclosure of the mortgage, and has just discovered it. Moore purchased the land upon which the shop was situated, for the purpose of assisting in the consummation of the fraud, and with full notice of plaintiff's

rights in the premises. Moore is insolvent. If the property is sold under a mortgage fi. fa., with this cloud hanging over the title, the price realized would be vastly inadequate. Petitioner, waiving discovery, prayed that it have a special lien on lots No. 139 and 138, that lot 138 be decreed to extend to new Decatur street and to embrace that portion of lot 139 on which the shop is located, and that the same be decreed to be sold by the sheriff, together with the land embraced in the mortgage, and the proceeds of the sale applied to the payment of the mortgage debt; also for general relief.

W. J. and J. J. Carter answered, denying the allegations as to fraud or mutual mistake, and alleging that as soon as they discovered that M. M. Green claimed title to the lot on which the shop was erected, and for which she soon after brought a suit in ejectment against them, they notified petitioner of such claim, and offered petitioner the opportunity of protecting itself under its mortgage, offering to borrow money of petitioner with which to purchase the land from Mrs. Green and take title to themselves, and secure petitioner by other and additional security, thereby making good petitioner's first mortgage lien on the land, defendants being unable themselves to raise the funds necessary to purchase the land from Mrs. Green; and petitioner agreed to make the loan, whereupon defendants proceeded to contract for the purchase of the land from Mrs. Green, and a deed was drawn by her to defendants in accordance with the above understanding and agreement with petitioner, the price agreed upon being $375; but when defendants called on petitioner for the promised loan, petitioner refused the same, and defendants thereupon notified said Moore of the claim by Mrs. Green, that he might if he saw fit purchase the land for his own protection under a mortgage then held by him against defendants on said shop, and Moore immediately sent to W. J. Carter $400, with instructions to purchase the land for him, which said Carter did, and took the deed therefor and sent it to Moore, after putting it on record, and the deed, so far as they know, has remained in Moore's possession until now, these defendants not having or claiming any interest in the deed. Moore answered, denying the charges of fraud or collusion on his part, also the

allegation of insolvency, and alleging that his purchase and claim were made in good faith. The cases were by consent of the parties, consolidated, and the following questions were submitted to the jury: (1) Does the original mortgage given by Carter & Bro. to the Dublin Banking Company actually cover the land on which the shops are located? (2) Was the money, paid to Mrs. Green for the land, the money of Moore, or the money of W. J. and J. J. Carter? (3) Was [plaintiff] notified by W. J. Carter, before the renewal of the mortgage, that he had discovered the shop was on the land of Mrs. Green? (4) Did Carter & Bro., or either of them, assure plaintiff that they were buying up the title of Mrs. Green to protect plaintiff's mortgage? The court, in charging the jury, instructed them that if they should answer the first question in the affirmative, they need not go further. The jury rendered a verdict, dealing only with the first question, and answering that in the affirmative. On this finding the court rendered a decree in favor of the plaintiff, which will be more specifically referred to hereafter. The defendants made a motion for a new trial, which was overruled, and they excepted. Such of the grounds only as are deemed material to an adjudication of the questions raised will be hereafter set out and considered.

On the trial of the cause, the plaintiff put in evidence the note and mortgage; the fi. fa. issued upon the foreclosure of the mortgage; the claim filed by George W. Moore to that portion of the property levied on, on which the machine-shops were located; deed dated January 10, 1893, and recorded April 6, 1893, from Mrs. M. Green to G. W. Moore, conveying one and one half acres, more or less, in the town of Dublin, Laurens county, Ga., being two town lots containing three quarters of an acre each, and known by the plan of the town as town lots Nos. 123 and 139, bounded on the north by Madison street, west by Decatur street, south by Marion street, east by Weaver lands. There was oral testimony on behalf of the bank, to the effect that the mortgage involved in this action was a renewal of an original mortgage executed in September, 1892, covering the same described property; that W. J. Carter, representing his firm, wanted to borrow the money, and offered the two lots

and buildings, which he estimated as being worth twenty-five hundred dollars, as security. Carter represented that he bought the land from Fuller & Jocelyn. At the time of the execution of the mortgage nothing was said as to any adverse claim to the land; and notwithstanding the bank had notice of such adverse claim within a month after the original mortgage was executed in 1892, it took no steps to protect its mortgage, as it relied upon Carter's assurance that there was nothing in the adverse claim, and that its mortgage would be protected. Between the 10th and 20th of January, 1893, Carter paid Mrs. Green some money in the presence of the cashier of the bank, and told the cashier he did not want the bank's mortgage disturbed or his credit hurt, and he was therefore paying the money to have the claim "hushed up." Carter said nothing about anybody else purchasing Green's claim, and the bank did not know that Moore claimed to be purchaser of the land until about the time the mortgage was put in judgment. Carter never made any application to the bank for a loan to buy the property claimed by Mrs. Green. When the cashier found that Moore had a mortgage on record, and asked Carter why he did not state in it that the bank's was the first mortgage, Carter replied, "That is all right, and Moore knows that," and assured witness that the paper was all right and that the bank had a first mortgage on the property. When witness learned that Moore had some claim to the property, he went to Carter to ascertain exactly what part of the lot he claimed; he and Carter went to the shop together, and witness first understood that the dividing line would cut off only a part of the boiler-house, but about the time the rule absolute was granted on the mortgage, a survey was made, and witness was then pointed to a line which embraced within Moore's claim all the land on which the shops were located. The shops were situated between a ditch and Decatur street, and were located on a part of lot No. 139. The description contained in the mortgage referred to New Decatur street and to the new map of Dublin, and would have left the shops on the land covered by the mortgage according to that description. The value of the lots covered by the mortgage, outside of the buildings, is from one hundred and

twenty to one hundred and twenty-five dollars; while the whole property, including the buildings, is worth twenty-five hundred dollars. Mrs. Green lives in Dublin, was living there at the time the loan was negotiated, and had the same opportunity to know the building was being erected on her land as anybody else would have that owned property. When the shops were being built, neither Mrs. Green nor her husband knew that they were being erected on her land; but after they were completed, the husband of Mrs. Green had the land "run out," and Carter was at once notified that they were on Mrs. Green's land.

There was testimony in behalf of the defendants, to the effect that Carter did not know at the time the shops were built, nor at the time the loan was originally procured, that Mrs. Green claimed title to the land on which they were situated, but on the contrary believed that such land belonged to Carter & Bro. As soon as Carter learned of Mrs. Green's claim, he notified the bank, and endeavored to borrow from it sufficient funds to settle the claim, stating to the bank that the firm of Carter & Bro. was unable financially to pay off the claim. Upon the refusal of the bank to make the loan, Carter communicated with G. W. Moore, a brother-in-law, who lived at Charleston, S. C., and who had loaned to the firm of Carter & Bro. from time to time sums aggregrating five thousand dollars and took a mortgage on property to secure the same, in which communication Carter advised Moore of the adverse claim; whereupon Moore sent to Carter four hundred dollars with which to buy the property and take title thereto for Moore. Carter and his brother are now in possession of the shops for Moore, receiving salaries for their services; and there is no agreement between themselves and Moore by which they can ever get the property back at any time. The transaction by which Moore bought the property from Mrs. Green was not kept concealed by Carter from the bank or its officers. The deed was recorded and sent immediately to Moore. The bank first promised to lend the money with which to buy the land from Mrs. Green, whereupon Carter notified Green to make out a deed; but the bank having failed to comply, it became necessary to have the deed changed and executed in the name of Moore. Defendants put

in evidence original suit between Mrs. M. M. Green and W. J. & J. J. Carter, filed in Laurens superior court, December 22, 1892, to recover lots of land in the city of Dublin, Nos. 122 and 139, and especially a strip the width of sixty-five feet west of New Decatur street and up to the east side of old Decatur street; and it was agreed that this suit was settled or dismissed about the date of the deed from Green to Moore. There was evidence that Moore had made a short visit to Dublin, three or four months before the trial, and that that was the only time he had ever been in Dublin. There was also evidence tending to show the solvency and good character of Moore.

1. On the levy of the mortgage fi. fa. in favor of the Dublin Banking Company, the defendant Moore filed a claim to that part of the land on which the execution had been levied, and on which the machine-shop was located. The issue to be tried under this levy and claim was the title to that part of the land. On the interposition of the claim, however, the defendant in error, as will be seen from the preceding statement of the case, filed its equitable petition, in which, after alleging in detail the facts of the loan of the money by the bank to Carter & Bro., and the execution of the mortgage given to secure the payment of such loan, it set out certain facts, detailed in the foregoing statement, as entitling it to equitable relief; and prayed that "petitioner have a special lien on lots 139 and 138, and that the same be decreed to be sold by the sheriff of said county," and that "lot of land number 138 [one of the lots mortgaged] be deemed to extend to new Decatur street, and to embrace such portion of lot number 139 [on which the shop is alleged to be located] as is necessary to make said lot conform to the agreement of the parties to the contract," etc., so as to include the machine-shop. Under this petition it was sought, because of alleged mistake on the part of the mortgagees and fraud on the part of the defendants Carter and Moore, to have a special lien decreed to exist on lot number 139, in favor of the plaintiff below, for the security of its debt, notwithstanding that lot was not embraced in the mortgage; but in no part of the petition was paper title to the land, on which the special lien was sought, denied to have been in Moore. On the contrary, the

theory of the plaintiff is, that such title was in Moore, but that, for the causes alleged, it ought to be held by him subject to an equitable lien for the payment of the plaintiff's debt. So that the two issues raised by the claim case and the petition are: 1st. Whether the land claimed by Moore is, at law, subject to the execution. 2d. Whether the defendant Moore, who holds the title to that part of lot No. 139 on which the machine-shop is located, by reason of fraudulent or collusive conduct with the debtors, in equity holds the land subject to the petitioner's mortgage. The two cases were consolidated at the trial, and much evidence was introduced to support the various contentions of the parties. The case was submitted to the jury by propounding certain written questions for their answer; the first of which was: "Does the original mortgage given by Carter & Bro. to the Dublin Banking Company actually cover the land on which the shops are located?" To this question the jury returned an affirmative answer, which was the full extent of their finding; they having been instructed, if they answered this question in the affirmative, not to consider any other question. On this finding of the jury, the court decreed that the property in dispute, including the improvements thereon, "be and the same is hereby declared subject to the mortgage fi. fa." etc., "and that said fi. fa. do proceed against the same." The plaintiffs in error made a motion for a new trial, on several grounds, one being, that the court erred in charging the jury as follows: "Does the original mortgage given by Carter & Bro. to the Dublin Banking Company actually cover the land on which the shops are located? The plaintiffs in this case insist that the description in their mortgage actually covers the property in dispute; that it is upon the land as set forth in their mortgage. The defendants deny that, and that makes· the first issue you are to pass upon. If you should find to the first inquiry that this property is actually covered by the mortgage given by Carter & Bro. to the Dublin Banking Company, you need go no further. If you should find in favor of the defendants, in that case that it does not actually cover the property, you would pass to the second question."

From the view we take of the case, it is only necessary to

place our decision on this ground of the motion.    As we have seen, on the levy of the execution, Moore asserted his title to a part of the land levied on, through the medium of a claim. Then the petitioner, admitting that Moore held title to the part claimed, set out certain facts of a fraudulent and collusive nature, which it alleged rendered the land claimed by Moore subject to the lien of its mortgage, notwithstanding Moore's title. The jury only ascertained the fact that the mortgage covered the land on which the shops were located.    Both the petitioner and Carter testified that, at the time the mortgage was given, they in fact believed it actually covered the land on which the shops were located ; but petitioner distinctly avers that, at that time, title to the land on which the shops were and are located was in Mrs. Green.    As both the mortgagee and the mortgagors agreed on this fact in the pleadings, the question at issue was not what the mortgage covered.    Suppose it did in fact cover that part of the land, under the admissions in the petition *title* was shown not to be in the mortgagors at the time of the execution of the mortgage.    This finding does not adjudicate the rights of the defendant Moore, under the pleadings ; and as the pleadings now stand, he is entitled to have his title passed on by the jury in some appropriate manner, before the execution can proceed to sell the land pending his claim.    It may be, as there was some confusion existing in relation to the lines of the lots, it was understood that this finding settled the location of the shops on one of the lots originally purchased and described in the mortgage.    How this is, we can not say.    We can not gather such an understanding from the record, and we dispose of it as we find it.    The finding of the jury was not sufficient to authorize the decree rendered.    The question made by the claim and the petition as it stands is, whether the land claimed is subject ; and this depends on the determination, under the claim, whether the mortgagors had title, and under the petition, whether Moore, the admitted holder of the title, was guilty of such fraud in the purchase as made the land, in equity, subject to the lien of the mortgage.

2. We are not to be understood as passing on the merits of the case under the evidence.    They are not under review.    We

send the case back, because the ascertained facts do not determine the issues made by the parties in their pleadings, and, without more, do not support the decree which was rendered.

*Judgment reversed.    All the Justices concurring.*